Martin, J.
I concur in the finding that the claim of the Watts heirs is superior to the Gregg title. And believing that the church has not succeeded to the Watts title it is not neccessary to enquire whether it may dispute the Gregg title under which alone it entered into'and retained possession.
I dissent from the conclusion that the church has any right or equity under Watts.
The issue arises upon the cross petition filed by the church setting up the Watts deed of 1823, and .seeking its correction upon the ground of an alleged mistake in the description of the property intended to be conveyed, namely, that the deed conveyed lot 81 when the intention was to convey lot 86. It was given on the expressed consideration of one dollar to the trustees of the church and their successors forever. No trust is indicated; and the church as a private incorporated society took the title to lot 81 in fee simple, and could ostensibly have sold the same and disposed of the proceeds at will. If the conveyance had been of lot 86, which was at the time an old graveyard, it would have been subject to the easement and have passed the reversion only. The claim of the church rests on the validity of the Watts title and on an unexecuted contract to convey it.
To entitle a party to the equity of correction and specific performance, the mistake must be shown to have been mutual and must be made out by clear and indisputable evidence; and the contract or promise itself must be supported by a valuable consideration. The decision of the majority of the court is placed on these propositions, viz.: 1st. That the testimony clearly establishes the mistake; and 2d. That the equity is available because the expressed consideration of one dollar is a valuable consideration in this particular case; and that if it is not, the long acquiescence of the Watts heirs is an equivalent by way of estoppel.
The controversy arose some fifty years after the date of the deed. Watts and the witnesses to the deed and all *635 other persons supposed to have any personal knowledge of the transaction were dead when this controversy arose. The theory of mistake rests wholly on conjecture. Its most plausible, if not sole support is the fact that Watts died leaving an outstanding contract for the sale of lot 81, which was executed by his heirs. But many conjectures readily, suggest themselves, some of which are quite as plausible as that of the specific mistake relied on here.
And after this great lapse of time, with no intervening adverse claim or question of any kind, the law wisely supplies the most satisfactory conjecture in the presumption of a lost reconveyance. At any rate mere conjecture falls far short of that clear proof required by law.
But assuming the fact of mistake as claimed, the conclusive objection remains that the promise was voluntary. The expressed consideration was one dollar; and there is no evidence on the subject save this acknowledgment in the deed. A deed is the act of the grantor, and is made presumably at his expense; and everybody knows that as a consideration for land expressed in a deed the sum of one dollar is always a nominal consideration. In the absence of any testimony to the contrary it would seem that this acknowledgment was for a technical and fictitious purpose, like that of a pepper-corn in a lease. It is nominal in fact, though valuable in kind. And in a deed it is held to express value to some extent, and parties are sometimes estopped to set up the truth that it is nominal. But of course it is not so in the case of executory contracts or promises.
I confess my inability to appreciate the proposition that the Watts heirs are in any wise affected by their alleged acquiescence. They were owners of the reversion only, arid had no right or duty with respect to the easement except to acquiesce in it. As long as the lot contained graves they, as reversioners, wex’e postponed. Their only acquiescence was in doing nothing, whexx there was no adverse possession or claim and no right to do anything. They had no cause of complaint, not even “slander of title.” The little (and *636 it was very little) that was done by the church in repairing fences, etc., was done at the expense of the public on subscription for the purpose, and was done in the line of their agency or custody over the easement, and was not only consistent with its possession under Gregg, but in law and fact is referable to it. For what duty can a reversioner as such have in the control of the easement ? I think that this alleged equity is an afterthought.
It may not be amiss to add that no neglect or carelessness is charged against the Watts heirs; whilst it stands confessed that for more than fifty years before suit the church had the deed sought to be corrected; and if it now has a cause of action it had it during all that time. This is a circumstance of great weight, especially in chancery. As Story observes, “great delay is a great bar in equity.”